UNITED STATES

v.

Master Sergeant Jerry A. BERMAN, FR 567–68–7740, United States Air Force.

UNITED STATES

v.

Staff Sergeant Waddell WEAVER, FR 261–08–4721, United States Air Force.

UNITED STATES

v.

Sergeant Jesus M. OTERO, FR 077–50–8390, United States Air Force.

UNITED STATES

v.

Technical Sergeant Ellis H. MILLER, II, FR 261–17–8165, United States Air Force.

UNITED STATES

v.

Staff Sergeant Cortez A. COLEMAN, FR 403–76–9651, United States Air Force.

UNITED STATES

v.

Staff Sergeant Robert L. DEMARS, FR 568–15–6552, United States Air Force.

ACM 26913 (f rev), ACM 26561 (f rev), ACM 26334 (f rev), ACM 26681 (f rev), ACM 26332 (f rev) and ACM 26564 (f rev).

U.S. Air Force Court of Military Review.

Sentence Adjudged 10 March 1988, 3 Nov. 1987, 1 June 1987, 10 Dec. 1987, 11 Dec. 1987 and 2 Oct. 1987.

Decided 16 March 1989.

Appellate Counsel for the Appellants: Colonel Leo L. Sergi, Colonel Richard F. O'Hair, Lieutenant Colonel Patrick C. Sweeney, Major Lynne H. Wetzell, Captain Darla G. Orndorff, Captain Laurence M. Soybel and Captain William E. Boyle.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Terry M. Petrie.

Before HODGSON, HOLTE, FORAY, MICHALSKI, LEWIS, BLOMMERS, KASTL, MURDOCK and PRATT, Appellate Military Judges, En Banc.

DECISION UPON FURTHER REVIEW

HODGSON, Chief Judge:

 Judges, like Caesar's wife, should always be above suspicion. An impartial and disinterested trial judge is the foundation on which the military justice system rests, and avoiding the appearance of impropriety is as important as avoiding impropriety itself.

In a consolidated pleading each of the above named appellants have assigned the following error:

WHETHER THE MILITARY JUDGE ERRED TO THE PREJUDICE OF THE APPELLANT'S SUBSTANTIAL RIGHTS BY FAILING TO RECUSE HIMSELF IN ACCORDANCE WITH R.C.M. 902?

This assertion is based on the results of an internal inquiry conducted by the Air Force Trial Judiciary. This report contained affidavits which suggested the existence of an intimate relationship between the trial judge and the Air Force attorney prosecuting the case. Appellate government counsel acknowledged the seriousness of the allegation and asked that a limited evidentiary hearing be conducted "to factually dispose of the issues raised by the [inquiry] and to determine the scope of cases affected." *See United States v. DuBay*, 17 U.S. C.M.A. 147, 37 C.M.R. 411 (1967).

On 19 July 1988, we ordered such a proceeding; it has now been completed. The military judge who conducted this hearing has provided us with an excellent record and findings of fact which in substance state: Judge Joseph E. Miniclier sat on the trials of the six appellants whose cases are before us. Captain Connie Edgar was the trial counsel. Judge Miniclier and Captain Edgar became professionally acquainted in early 1986, when he was assigned to cases at Nellis AFB. Between early 1986 and 4

December 1987, Judge Miniclier attended several social gatherings at which Captain Edgar and others were in attendance. During this period Captain Edgar shared an apartment with Captain Leanne Wells, an Area Defense Counsel. Prior to 4 December 1987, Captain Wells did not notice any particular closeness between Judge Miniclier and Captain Edgar, although in one trial, when Edgar was the defense counsel, Wells felt that Judge Miniclier seemed to focus his attention and interest toward Edgar. However, Edgar did indicate to Wells that if it were not for her boyfriend (Edgar's) living with her in the apartment "something could develop with [Judge Miniclier]."

In June 1987, Captain Peter Herman was assigned as an Area Defense Counsel in the same office as Captain Wells. Later, Herman became reluctant to ask for a bench trial before Judge Miniclier where Captain Edgar was the trial counsel because of his perception that a close friendship existed between Miniclier and Edgar.

On approximately 4 December 1987, Captain Edgar hosted a dinner party at her apartment where Judge Miniclier was one of the guests. Later in the evening after everyone had left, Miniclier and Edgar continued talking until the early morning hours. The conversation turned to the death of Edgar's father with Miniclier hugging Edgar to comfort her. He stayed overnight in the apartment and slept with Edgar in her bedroom. The couple attempted to have sexual intercourse, but were unsuccessful.

Between 4 December 1987 and the end of April 1988, with the exception of January 1988, Judge Miniclier was frequently assigned to cases at Nellis AFB. During these trips, he and Edgar went out together—sometimes alone and sometimes with others. On five or six occasions Captain Edgar did not return to her apartment until the next day. The relationship between Miniclier and Edgar progressed during February, March and April 1988, to the point where the couple engaged in a number of sexual contacts.

Captains Wells and Herman both testified that after 4 December they felt precluded from requesting a bench trial before Judge Miniclier in cases where Captain Edgar was the trial counsel because of their close intimate relationship. Until April 1988, Captain Edgar did not think it was necessary that she not appear as a trial counsel before Judge Miniclier.

At the evidentiary hearing Judge Miniclier adamantly denied that his relationship with Edgar had an effect on his decisions in any trial in which she was a participant. He also acknowledged, however, that it would be reasonable for an accused to have doubts about whether he or she would be treated impartially where there was "a very close, personal relationship" between the judge and the attorney who appeared for the government.

R.C.M. 902, which is based on 28 U.S.C. § 455, states:

Rule 902. DISQUALIFICATION OF MILITARY JUDGE

(a) *In General.* Except as provided in subsection (e) of this rule, a military judge shall disqualify himself ... in any proceeding in which *that military judge's impartiality might reasonably be questioned.*

(Emphasis added.)

■ To "disqualify" a judge means to bar legally. It is synonymous with lack of legal capacity and with the inability to serve. *Arnold v. Eastern Air Lines,* 712 F.2d 899 (4th Cir.1983). Due process requires a trial before an impartial and disinterested judge. Each side is entitled to nothing less than the neutrality of an impartial judge. *United States v. Cockerell,* 49 C.M.R. 567 (A.C.M.R.1974); *see also United States v. Jones,* 15 M.J. 967 (A.C.M. R.1983).

■ Since the military rule on the disqualification of judges closely parallels the federal rule, federal decisions in this area can offer guidance. In our view the standard to be employed under R.C.M. 902 is an objective one. *United States v. Winston,* 613 F.2d 221 (9th Cir.1980). Thus, the test for the appearance of partiality on the part of a judge so as to require recusal is

whether an objective, disinterested observer fully informed of the facts would entertain a significant doubt that justice was done. The question to be asked is: Would a hypothetical onlooker be troubled by what happened? *United States v. Murphy,* 768 F.2d 1518 (7th Cir.1985).

Appellate government counsel seek to divide the six cases before us into two categories: Those tried before 4 December 1987, the date Judge Miniclier and Captain Edgar became sexually involved, and those tried after. They argue that while none of the six appellants have established they were prejudiced by Miniclier and Edgar's romantic entanglement, there might be a perception by the general public that appellants, Berman, Coleman and Miller, who were tried after 4 December, did not receive a fair trial because of the judge's sexual involvement with the prosecutor. Accordingly, the government concedes that these three appellants are entitled to a new trial. However, regarding appellants, Otero, Demars and Weaver, who were tried before 4 December, they urge that the transcripts in these trials do not factually show any partiality or bias by Judge Miniclier in favor of Captain Edgar. The government further contends that any suggestions to the contrary are based on mere conclusions, opinions, or rumors. Thus, appellate government counsel assert that 4 December 1987 should be accepted as the date that Judge Miniclier crossed the line in his professional relationship with Captain Edgar so as to become disqualified in cases in which she later appeared as counsel.

■ Appellate government counsel's request that we select 4 December 1987, as the date Judge Miniclier began his affair with Captain Edgar, is akin to seeking to accomplish the task achieved by the Irish theologian, Bishop James Ussher. Bishop Ussher, in the 17th century, concluded that the universe was created on the morning of 13 October in the year 4004 BC. Unlike Bishop Ussher, we are unwilling to be that exact in our judgment of when Judge Miniclier became disqualified. What happened on 4 December and after between himself and Captain Edgar is relevant to our assessment of their relationship prior to that date. In determining a trial judge's disqualification to sit we do not require proof beyond a reasonable doubt, but rather some probative evidence that convinces us that the judge in question lacks the appropriate degree of impartiality. *See United States v. Miranne,* 688 F.2d 980 (5th Cir. 1982).

■ On the facts before us we conclude that Judge Miniclier was disqualified in all six trials that are the subject of this decision. While we are unable to parse the precise moment of Judge Miniclier's disqualification, the totality of his relationship with Captain Edgar creates an indelible appearance of partiality that legal arguments will not wash away. Indeed, sometimes the appearance of partiality alone is sufficient to disqualify a judge. *Limeco, Inc. v. Division of Lime, et al,* 571 F.Supp. 710 (N.D.Miss.1983). Judicial ethics "exact more than virtuous behavior; they command impeccable behavior. Purity of heart is not enough. Judges' robes must be as spotless as their actual conduct." *Hall v. Small Business Administration,* 695 F.2d 175, 176 (5th Cir.1983).

The first paragraph of the Commentary to the ABA *Code of Judicial Conduct,* Canon 2 (1980) * sets the standard of conduct and the behavior expected of trial judges. We think it appropriate to set it out here:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all im-

---

* CANON 2

A JUDGE SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL HIS ACTIVITIES

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgement. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence. He should not testify voluntarily as a character witness.

propriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

It is helpful, from time to time, to renew one's understanding of the *Code of Judicial Conduct.*

■ Our decision today should not be read as disqualifying a trial judge on the basis of personal acquaintanceship or a professional friendship that is shared with other members of the bar. *Selfridge v. Gynecol, Inc,* 564 F.Supp. 57 (D.C.Mass.1983). The practice of military law can sometimes require the military judge and counsel to attend the same social gatherings, to share the same messing facilities, the same general living accommodations, and on occasion, the same mode of transportation. The facts of each situation will decide if the judge's relationship with counsel is improper.

■ Finally, we are concerned that two area defense counsel were sufficiently worried about a judge's relationship with opposing counsel to refrain from asking for a bench trial in cases where that counsel appeared, but did nothing to clarify the matter or seek advice from their professional supervisor. *See* Air Force Regulation 111–1, *Military Justice Guide,* paragraph 18–13(e) and (f)(2) (30 September 1988). In the future we suggest that guidance be sought should a like situation arise.

■ Where a trial judge is disqualified for impropriety the remedy is a rehearing. *United States v. Widgery,* 778 F.2d 325 (7th Cir.1985); *see also United States v. Sherrod,* 26 M.J. 30 (C.M.A.1988). The findings of guilty and the sentence in the case of each appellant before us are set aside. A rehearing as to each appellant may be ordered.

Senior Judges FORAY and KASTL, and Judges MICHALSKI, BLOMMERS, MURDOCK and PRATT concur.

Judge HOLTE, with whom Senior Judge LEWIS joins (concurring in part/dissenting in part):

I have no disagreement with the majority opinion as written. It is with the disposition of the six involved cases that I respectfully disagree.

I would affirm in total *United States v. Otero,* tried 1 June 1987; *United States v. Demars,* tried 2 October 1987; and *United States v. Weaver,* tried 3 November 1987. To do otherwise would be to retroactively apply the judge's indiscretions, which started on 4 December 1987. In my opinion, until that date there is simply no evidence, actual or perceived, that would indicate any disqualification on the part of the military judge that would justify the setting aside of the findings and sentence of these cases.

As to the three remaining cases, I agree with the majority, that the findings and sentence of these cases should be set aside, but for a different reason. In my opinion, the conduct of the military judge on 4 December 1987 is a *per se* disqualification from any participation by him in these cases. This *per se* disqualification is, in my opinion, not based on perception, but rather is jurisdictional. In cases where the judge is *per se* disqualified, and does not voluntarily disqualify or recuse himself, such disqualification strips the court of subject matter jurisdiction, and the proceeding is a nullity from its inception. *Ellentuck v. Klein,* 570 F.2d 414 (2nd Cir.1978); *In re Jose S.,* 78 Cal.App.3d 619, 144 Cal.Rptr. 309 (1978); *State v. Slate,* 214 S.W. 85 (Mo.1919).