# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*[1]

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant JASON A. LOPEZ**
**United States Army, Appellant**

ARMY 20170386

Headquarters, United States Army Maneuver Center of Excellence
Richard J. Henry, Military Judge
Colonel Wendy P. Daknis, Staff Judge Advocate

For Appellant: Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Major Angela D. Swilley, JA; Captain Paul T. Shirk, JA (on brief); Lieutenant Colonel Tiffany D. Pond, JA; Major Angela D. Swilley, JA; Captain Paul T. Shirk, JA (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig Schapira, JA; Captain Brian Jones, JA (on brief).

11 May 2020

---------------------------------------------------
MEMORANDUM OPINION ON REMAND
---------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BROOKHART, Senior Judge:

This is our second time reviewing this case under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 [UCMJ]. In our first review, we set aside and dismissed Specifications 1-5 of Charge IV (failure to obey a lawful general regulation) and affirmed the remaining findings.[2] *United States v. Lopez*, 78 M.J.

---

[1] Chief Judge KRIMBILL did not participate in this opinion. Judge SCHASBERGER participated in this opinion prior to her retirement.

[2] In June 2017, an enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of failure to go to his appointed

(continued . . . )

LOPEZ—ARMY 20170386

799, 811 (Army Ct. Crim. App. 2019). We reassessed appellant's sentence and approved only so much of the sentence as provides for confinement for twenty-three months. *Id.* While this court reiterates the analysis from our previous opinion, we focus here on the issue remanded by our Superior Court for our consideration.[3]

After our initial review, appellant sought review of his case by the Court of Appeals for the Armed Forces (CAAF). As part of his petition for grant of review, appellant asserted that his military judge lacked impartiality. This assertion was based on a notice appellant received that his military judge, Lieutenant Colonel (LTC) Richard Henry, "was involved in an inappropriate relationship with the wife" of an attorney practicing before him. Specifically, an administrative investigation found that LTC Henry engaged in an inappropriate relationship with Mrs. KC, the wife of Captain (CPT) AC, a judge advocate who practiced before LTC Henry as a trial counsel and later became a defense counsel in the same judicial circuit. The CAAF ultimately granted appellant's petition for review, and remanded his case for this court to address the following specified issue:

> WHETHER THE MILITARY JUDGE ERRED BY FAILING TO RECUSE HIMSELF BASED ON CIRCUMSTANCES THAT, IF KNOWN AT THE TIME OF APPELLANT'S COURT-MARTIAL, WOULD HAVE PROVIDED REASONS TO REASONABLY QUESTION HIS IMPARTIALITY.

---

(. . . continued)

place of duty, five specifications of failure to obey a lawful general regulation, two specifications of failure to obey a lawful order, two specifications of larceny of military property of a value over $500.00, one specification of larceny of military property of a value under $500.00, one specification of wrongful appropriation of property of a value under $500.00, three specifications of assault consummated by a battery, and two specifications of violating the National Firearms Act (28 U.S.C. § 5861), in violation of Articles 86, 92, 121, 128, and 134, UCMJ. The convening authority approved the adjudged sentence of confinement for two years, and credited appellant with 202 days against his sentence to confinement.

[3] We note that in our original opinion, we erroneously wrote that appellant was convicted of three specifications of larceny of military property of a value over $500.00. The correct recitation of appellant's convictions is as stated in note 2, *supra*.

2

LOPEZ—ARMY 20170386

*United States v. Lopez*, 79 M.J. 203 (C.A.A.F. 2019) (order). On remand, we granted appellant's motion to consider this case *en banc*. *United States v. Lopez*, ARMY 20170386 (Army Ct. Crim. App. 8 Jan. 2020) (order).

After careful consideration of the facts and circumstances surrounding LTC Henry's inappropriate relationship with Mrs. KC, we find that LTC Henry was disqualified from acting as the military judge in appellant's court-martial. Specifically, CPT AC served as the assistant trial counsel in appellant's court-martial, and LTC Henry's relationship with CPT AC's wife, Mrs. KC, created an appearance of partiality. Furthermore, after applying the test laid out in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862-64 (1988), we find that LTC Henry's involvement in appellant's case risks undermining the public's confidence in the judicial process. Accordingly, the only appropriate remedy is to set aside the guilty findings and sentence in appellant's case, which we do in our decretal paragraph.

## BACKGROUND[4]

The Judge Advocate General of the Army designated LTC Henry as a military judge in April 2015. In the summer of 2016, LTC Henry was stationed at Fort Benning, Georgia, where he served as a military judge until his removal in April 2018. Lieutenant Colonel Henry was married at all times relevant to this case.[5]

In the summer of 2016, CPT AC served as a trial counsel in the Fort Benning Office of the Staff Judge Advocate (OSJA). In this capacity, he practiced as a

---

[4] Our review and discussion of the facts and circumstances surrounding appellant's convictions is limited to those facts and circumstances necessary to resolve the issue remanded by our Superior Court.

[5] As we did in *United States v. Springer*, 79 M.J. 756 (Army Ct. Crim. App. 2020) and *United States v. Anderson*, 79 M.J. 762 (Army Ct. Crim. App. 2020), we take judicial notice of various items related to LTC Henry's relationship with Mrs. KC, located in two records of trial from another court-martial; *United States v. Rudometkin*, ARMY 20180058, and *United States v. Rudometkin*, ARMY MISC 20180675. Three items are particularly relevant to their relationship: (1) App. Ex. LXXIX, *United States v. Rudometkin*, ARMY 20180058 (military judge's findings of fact and conclusions of law concerning LTC Henry's inappropriate relationship); (2) transcript pages 1403-1541, *United States v. Rudometkin*, ARMY 20180058 (Article 39(a), UCMJ, post-trial hearing related to LTC Henry's relationship with Mrs. KC); and (3) Def. App. C., *United States v. Rudometkin*, ARMY MISC 20180675 (Army administrative investigation into LTC Henry's relationship with Mrs. KC).

3

prosecutor in front of LTC Henry. At all times relevant to this case, CPT AC was married to Mrs. KC.

Mrs. KC, a special education teacher, first met LTC Henry in October 2016 at a Halloween party hosted by the OSJA. As the party was crowded, Mrs. KC, LTC Henry, and LTC Henry's wife spent most of the evening talking in a bedroom. After the party, LTC Henry sent Mrs. KC a message via Facebook messenger thanking her for hanging out in "the introvert room." Thus began a frequent exchange of messages between Mrs. KC and LTC Henry, to whom she referred as "RJ." In their messages, they discussed personal issues such as children, family, work, and marriage, as well as "non[-]personal issues."

Over time, Mrs. KC's relationship with LTC Henry grew "closer." At the Fort Benning staff judge advocate's farewell party in "the summer of 2017," LTC Henry's wife introduced CPT AC as her "husband's best friend's husband." At the time, CPT AC was not aware that his wife was that close with LTC Henry. Later in the summer, Mrs. KC invited LTC Henry and his wife to dinner at her house. Captain AC elected not to attend after consulting with the Fort Benning chief of justice about concerns over attending such a dinner. Lieutenant Colonel Henry, his wife, and their daughter eventually went to dinner at Mrs. KC's house in November 2017, while CPT AC was away on temporary duty (TDY).

Appellant's trial on the merits occurred 19-22 June 2017 at Fort Benning, Georgia. Lieutenant Colonel Henry presided as the military judge, and CPT AC served as the assistant trial counsel. At an Article 39(a), UCMJ, session prior to trial, LTC Henry stated on the record that he was not aware of any matter that might be a ground for challenging him as the presiding judge. Neither the prosecution nor the defense voir dired or challenged LTC Henry.

After appellant's trial, the relationship between LTC Henry and Mrs. AC evolved.[6] They texted each other at all hours, they ate lunches and dinners together, attended yoga classes, and Mrs. KC even spent time in LTC Henry's chambers during an unrelated trial. Mrs. KC eventually admitted that she shared things with

---

[6] Our opinion rests squarely upon the facts as known at the time of appellant's court-martial. Nonetheless, and as discussed in the concurring opinion, it is permissible under *United States v. Kish*, NMCCA 201100404, 2014 CCA LEXIS 358 (N.M. Ct. Crim. App. 17 Jun. 2014) and *United States v Berman*, 28 M.J. 615, 618 (A.F. Ct. Crim. App. 1989) for this court to look at the ultimate course the relationship took. If nothing else, doing so provides a lens through which to view the nature of the relationship at the time of appellant's trial and assures us that we are not operating under any meaningful misapprehension in that regard.

LTC Henry that she only shared with one other longtime friend. Captain AC became increasingly suspicious that the relationship was inappropriate. Those concerns were heightened when Mrs. KC refused to let him see the text exchanges with LTC Henry and when he caught Mrs. KC lying about her meetings with LTC Henry.

After switching jobs to become a defense counsel at Fort Benning, CPT AC had renewed ethical concerns about practicing in front of LTC Henry. He expressed those concerns to his superiors in the U.S. Army Trial Defense Service, who in turn contacted LTC Henry's supervising judge. This led to LTC Henry's removal from the bench on 8 April 2018. A senior military judge was then appointed to conduct an investigation into LTC Henry's relationship with Mrs. AC. That investigation concluded that LTC Henry "was involved in a personal and emotionally intimate relationship with Mrs. [KC] between December 2017 - April 2018," and that relationship "created [an] appearance of impropriety."

## LAW AND DISCUSSION

"When an appellant, as in this case, does not raise the issue of disqualification until appeal, we examine the claim under the plain error standard of review." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citing *United States v. Jones*, 55 M.J. 317, 320 (C.A.A.F. 2001)). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *Id.* (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)).

"An accused has a constitutional right to an impartial judge." *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (citations and internal quotation marks omitted). "An impartial and disinterested trial judge is the foundation on which the military justice system rests, and avoiding the appearance of impropriety is as important as avoiding impropriety itself." *Berman*, 28 M.J. at 616. To ensure every military accused receives an impartial judge, the President promulgated Rule for Courts-Martial (R.C.M.) 902, which provides the framework for when a military judge must be disqualified from participating in a court-martial. Rule for Courts-Martial 902(a)-(b) establishes grounds for disqualification when a military judge is either actually biased or conflicted based on some specific grounds, or when the military judge appears to lack impartiality under all the facts and circumstances. *See also Martinez*, 70 M.J. at 157. Here, we focus on the appearance that LTC Henry was not impartial.

"[A] military judge *shall* disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." R.C.M. 902(a) (emphasis added). In some cases, a military judge may accept a waiver as to his disqualification if there is a "full disclosure on the record of the basis for disqualification." R.C.M. 902(e). Here, however, no waiver exists because LTC Henry never disclosed his relationship with Mrs. KC as a basis for disqualification.

To determine if a military judge should disqualify himself, "the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt" by the military judge's actions. *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (citations and internal quotation marks omitted). When conducting this test, we apply an objective standard of "any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned." *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982) (citations and internal quotation marks omitted).

If we determine the military judge should have disqualified himself, we then analyze the facts to determine if the error was harmless. "In a plain error context we look to see if the error materially prejudiced the substantial rights of the appellant" pursuant to Article 59(a), UCMJ. *Martinez*, 70 M.J. at 159.

Even absent material prejudice to a substantial right pursuant to Article 59(a), UCMJ, a judge's failure to disqualify himself may still require a remedy after applying the test laid out in *Liljeberg*, 486 U.S. at 862-64. *Id*. In *Liljeberg*, the Supreme Court considered three factors in determining "whether a judgment should be vacated" based on a judge's appearance of partiality: "[1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864. The CAAF applies the same three-part test in analyzing cases involving a military judge's appearance of partiality pursuant to R.C.M. 902(a). *See United States v. Quintanilla*, 56 M.J. 37, 45 (C.A.A.F. 2001).

The analysis for the third *Liljeberg* factor is "similar to the standard applied in the initial R.C.M. 902(a) analysis" in that we apply an objective standard and view the issue of disqualification through the eyes of a reasonable member of the public. *Martinez*, 70 M.J. at 159-60. However, the analysis of the third *Liljeberg* factor is much broader than the initial R.C.M. 902(a) analysis because "we do not limit our review to facts relevant to recusal, but rather review the entire proceedings, to include any post-trial proceeding, the convening authority action, [appellate proceedings], or other facts relevant to the *Liljeberg* test." *Id*. at 160. Put simply, courts consider the totality of the facts and circumstances surrounding the basis for disqualification to determine if a remedy is warranted. *See, e.g., Kish*, 2014 CCA LEXIS 358 (considering both the military judge's actions during appellant's court-martial and the military judge's public comments made two weeks after appellant's trial as part of the analysis of *Liljeberg's* third factor); *see also Berman*, 28 M.J. at 618 ("What happened on 4 December and after between [the military judge and the prosecuting attorney] is relevant to our assessment of their relationship prior to that date.").

To begin our analysis of the impact LTC Henry and Mrs. KC's relationship had on appellant's trial, we must first determine whether a reasonable person, knowing all the circumstances, would question LTC Henry's impartiality. If so, we then must determine whether a remedy is required. For the reasons set out below, we find a reasonable person would question LTC Henry's impartiality in appellant's case, and that a remedy is required to preserve public confidence in the military justice system.

Appellant was arraigned in May of 2017, and tried on the merits the next month. At the arraignment, LTC Henry stated he knew of no grounds that would disqualify him. However, we find LTC Henry's relationship with Mrs. KC formed the basis for disqualification by the time appellant was tried on the merits in late June 2017. The evidence demonstrates that from the fall of 2016 until he was eventually removed from the bench in April 2018, LTC Henry developed a very close and intimate relationship with Mrs. KC, the wife of a prosecutor in his jurisdiction. Most critical to our review, it was in the summer of 2017, at or near the time of appellant's court-martial, that Mrs. Henry introduced CPT AC as "her husband's best friend's husband," indicating that the military judge in appellant's case and the wife of a prosecutor in appellant's case were close enough to be openly recognized as best friends.[7] We conclude that under these facts and circumstances, a reasonable person would question the military judge's impartiality. To quote the Supreme Court in *Liljeberg*, "[t]hese facts create precisely the kind of appearance of impropriety that [R.C.M. 902(a)] was intended to prevent. The violation is neither insubstantial nor excusable." 486 U.S. at 867. We therefore find that at the time of the trial on the merits in June 2017, LTC Henry was disqualified under R.C.M. 902(a) and should have either recused himself or disclosed the full details of his relationship with Mrs. KC to determine if the parties waived his disqualification. Failing to recuse himself or make such a disclosure was error.

---

[7] The dissent argues that Mrs. Henry's comment that CPT AC was her "husband's best friend's husband" was made on a "date unknown" and that appellant's trial falls outside the timeframe of impropriety as found by the investigating officer. First, we conduct our own examination of the evidence and are not bound by the conclusions of the investigating officer. Secondly, CPT AC's testimony specifically identifies that Mrs. Henry's introduction was made in the "summer of 2017," at the staff judge advocate's going away party. A reasonable definition of summer includes June, the month of appellant's trial, and extends through August. Given the critical importance of the right to an impartial judge, "we are unwilling to be that exact in our judgment of when" the military judge's relationship became disqualifying. *Berman*, 28 M.J. at 618. Instead, we conclude that a relationship of the nature described by the facts of this case, existing at any time during the "summer of 2017," is sufficiently proximate to appellant's trial to sustain our concerns.

Finding error, we next test to see if the error was harmless. We do not find that appellant suffered material prejudice to a substantial right. We have not identified any rulings or decisions in appellant's case that appear to spring from LTC Henry's failure to disqualify himself or disclose his relationship with Mrs. KC. However, finding that the military judge's error was harmless pursuant to Article 59(a), UCMJ, does not end our analysis. *See Martinez*, 70 M.J. at 159.[8] Even absent specific prejudice, we must apply the three-prong test outlined in *Liljeberg* to determine if a remedy is required to cure the error. *Id.*

Under the facts of this case, the third prong of *Liljeberg* is dispositive. Accordingly, it is unnecessary to examine the case under the first two factors. As noted above, the analysis for the third *Liljeberg* factor is "similar to the standard applied in the initial R.C.M. 902(a) analysis," but is much broader in scope because we must consider the totality of the facts and circumstances surrounding the basis for disqualification to determine if a remedy is warranted. *Martinez*, 70 M.J. at 159-60; *Kish*, 2014 CCA LEXIS 358, at *11-15. There may be times when we apply *Liljeberg* and conclude the military judge should have disqualified himself or herself under R.C.M. 902(a), but can say with certainty that a reasonable person knowing the entire record would have confidence in the judicial process. This is not such a case.[9] Having reviewed the entire record and subsequent appellate proceedings in this case, we conclude that failing to remedy the error in this case would undermine the public's confidence in the judicial process.

At the time of appellant's trial on the merits, the evidence demonstrates that LTC Henry and Mrs. KC's relationship, through texting and other interactions, had already evolved to the point that they were described by LTC Henry's wife as best friends. In *United States v. Sullivan*, our Superior Court noted that while "[p]ersonal relationships between members of the judiciary and witnesses or other participants in the court-martial process do not necessarily require disqualification," they do create "special concerns." 74 M.J. 448, 454 (C.A.A.F. 2015). Regardless of whether Mrs. Henry's comment was intended as blithe, such a close relationship between two married individuals objectively carries implications of impropriety

---

[8] In our first review of appellant's case, we wrote at length about LTC Henry's denial of appellant's motion to suppress. *See Lopez*, 78 M.J. at 804-11. As we did in our first review, we find that LTC Henry did not abuse his discretion in denying appellant's motion to suppress. Accordingly, that ruling does not form the basis for prejudice resulting from LTC Henry's failure to disclose his relationship with Mrs. KC.

[9] We reached a similar conclusion applying the *Liljeberg* factors in *Springer*, 79 M.J. 756.

which further heighten the "special concerns" alluded to in *Sullivan*. This is particularly true given Mrs. KC's secrecy and LTC Henry's failure, at any point, to disclose the relationship on the record.[10] In our view, it is axiomatic that a reasonable member of the public would lose confidence in the judicial process where the presiding military judge fails to disclose that he is "best friends" with the opposite-gendered spouse of the prosecutor in the same case.

Accordingly, we are satisfied, based upon the entire record, that LTC Henry's participation in appellant's court-martial caused it to lack the appearance of fairness necessary to sustain public confidence in the military justice system. The only appropriate remedy is to set aside appellant's guilty findings and sentence.

## CONCLUSION

The guilty findings and sentence are SET ASIDE. A rehearing may be ordered by the same or different convening authority.

Senior Judge BURTON, Judge RODRIGUEZ, and Judge WALKER concur.

Senior Judge ALDYKIEWICZ, concurring:

I concur with the majority in result, but write separately for several reasons.

First, I write to provide greater clarity on the nature of the relationship between the military judge presiding over appellant's case and the prosecutor's spouse, as well as the efforts taken by both to conceal the true nature of their relationship. Second, I write to highlight the importance of voir dire when deciding the disqualification of the military judge, the one charged with calling balls and strikes in a criminal trial.

Finally, I also write to briefly address the dissent. Although the dissent claims to consider the "totality of the facts and circumstances" as part of their

---

[10] A military judge has a continuing duty to disclose any potentially disqualifying matters on the record. R.C.M. 902(c)(1). Our Superior Court, on several occasions, has addressed the paramount importance of this duty, emphasizing that in many cases a full disclosure by the military judge, followed by a meaningful voir dire process, is sufficient to quell any concerns a reasonable member of the public may have about the fairness of the judicial process. *See United States v. Allen*, 33 M.J. 209, 213 (C.M.A. 1991); *United States v. Campos*, 42 M.J. 253, 262 (C.A.A.F. 1995); *United States v. Wright*, 52 M.J. 136, 141 (C.A.A.F. 1999); *United States v. Norfleet*, 53 M.J. 262, 270 (C.A.A.F. 2000).

analysis of the "reasonable member of the public standard," their application focuses, almost exclusively, on the events that occurred prior to adjournment in appellant's trial with little regard, if any, to what occurred after. In other words— what happened between LTC Henry and Mrs. KC after adjournment, in their opinion, bears little relevance to the nature of the relationship prior to, and up until, adjournment of appellant's case. I disagree, as does both the Air Force Court of Criminal Appeals, *see United States v Berman*, 28 M.J. 615, 618 (A.F. Ct. Crim. App. 1989), and the Navy-Marine Corps Court of Criminal Appeals, *see United States v. Kish*, NMCCA 201100404, 2014 CCA LEXIS 358 (N.M. Ct. Crim. App. 17 Jun. 2014). Additionally, the dissent claims to apply the third prong of the test laid out in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862-64 (1988) to the facts of this case. However, upon close examination, what they do is convert a non-prejudice based test into one testing for prejudice, the absence of which, in their opinion, precludes relief.

*Additional Facts: The Judge, Mrs. KC (a.k.a. The Military Judge's "Bestie"), and Their Efforts to Conceal Their Relationship*

The majority states:

> Our opinion rests squarely upon the facts as known at the time of appellant's court-martial. Nonetheless, and as discussed in the concurring opinion, it is permissible under [*Kish*] and [*Berman*] for this court to look at the ultimate course the relationship took. If nothing else, doing so provides a lens through which to view the nature of the relationship at the time of appellant's trial and assures us that we are not operating under any meaningful misapprehension in that regard.

I agree. I take this opportunity to provide greater clarity into the depth of LTC Henry's relationship with Mrs. KC and, more importantly, their respective efforts to keep its true nature from coming to light.

While the majority opinion touches on much of what follows, they do so only on the margins, in some cases minimizing what are significant details and in others, omitting them entirely. As the oft used idiom goes, the devil is in the details.

By December of 2017, LTC Henry and Mrs. KC were interacting on an increasingly frequent basis. According to CPT AC, he began to notice his wife was engaging in what he deemed to be suspicious behavior. One such occasion was during the members trial of *United States v. Springer*, which Mrs. KC attended. The trial on the merits began on 5 December 2017, and LTC Henry and CPT AC participated in the court-martial as the presiding judge and lead prosecutor,

respectively. On 8 December 2017, while the members deliberated on findings, Mrs. KC spent over an hour in LTC Henry's chambers. The door remained open during this visit.

As the majority noted, Captain AC also noticed the increased frequency of the texting between LTC Henry and Mrs. KC. The majority writes, "they texted each other at all hours." While accurate, the quoted language paints an incomplete picture. Mrs. KC and LTC Henry texted each other well into the night after their respective spouses retired to bed. When CPT AC inquired about the texting, Mrs. KC told CPT AC the messages were private and that "she had promised LTC Henry that she wouldn't reveal what he told her." Mrs. KC also related to CPT AC that LTC Henry's messages were supposed to be secret from both CPT AC and LTC Henry's wife. Of the few messages CPT AC did observe, LTC Henry stated "I'm glad I finally found somebody I can talk to" and "goodnight my bestie."

From December 2017 through March 2018, CPT AC's concerns about the relationship between LTC Henry and Mrs. KC continued to grow steadily. This was fueled by the frequency of the contacts between LTC Henry and Mrs. KC, Mrs. KC's increasing secrecy, and her apparent dishonesty concerning her interactions with LTC Henry. Specifically, in January 2018, Captain AC transitioned from his Fort Benning trial counsel position to that of defense counsel. At the same time, LTC Henry and Mrs. KC began attending yoga classes together on Saturday mornings. This later increased to include one to two weekday sessions. Often, they would spend time after these sessions at restaurants. On occasion, LTC Henry asked Mrs. KC to keep their meetings a secret, which she did.

In February 2018, LTC Henry invited Mrs. KC to use the Fort Benning courthouse deliberation room to study for her master's degree. Mrs. KC began using the deliberation room on Sunday afternoons and occasionally during weeknights. On these occasions, LTC Henry would meet Mrs. KC at the courthouse to let her in. Occasionally, LTC Henry would remain in the courthouse while Mrs. KC was there.

Lieutenant Colonel Henry and Mrs. KC also frequently met for secret lunches and dinners together. Among the places the two frequented were Starbucks, Chick-fil-A, Sonic, and the food court at the Post Exchange. On several occasions, LTC Henry took food to Mrs. KC at her classroom, and assisted her in preparing lessons and materials for her students. On one occasion, LTC Henry and Mrs. KC had dinner together at the Black Cow restaurant prior to an OSJA social function.

Beyond the yoga classes, meetings at the courthouse, and meals together, LTC Henry and Mrs. KC also spent time together on various other occasions. On one such occasion, CPT AC and Mrs. KC attended a party with their two children at the Henry residence. At some point, CPT AC left the party with their children, while Mrs. KC stayed behind and eventually became too intoxicated to drive home.

Lieutenant Colonel Henry drove Mrs. KC home that night, then returned the next morning to pick up Mrs. KC for yoga and eventually to retrieve her car from his house. On another occasion, LTC Henry took Mrs. KC to the emergency room after she suffered a panic attack. At the time, Mrs. KC was struggling with panic attacks and LTC Henry took her out to lunch in an attempt to see if she could control her panic attacks in public. She was unable to do so, and LTC Henry escorted her to the emergency room.

While CPT AC and Mrs. Henry were apparently aware of some of the interactions between LTC Henry and Mrs. KC, they were not aware of all of them. Mrs. KC noted that LTC Henry "asked me on occasion not to tell anyone of the content of our communications or of our meetings. I recall this happening once at yoga class because he returned from TDY early and did not want his wife to know he was in town."

It was not until early April 2018 that CPT AC discovered Mrs. KC had been lying to him about her interactions with LTC Henry. On 4 April 2018, after learning of his wife's dishonesty and the frequency of her interactions with LTC Henry, CPT AC's concerns about LTC Henry and Mrs. KC's relationship came to a head. After discovering that Mrs. KC misled him concerning a meeting at a park with LTC Henry, CPT AC accused Mrs. KC of having an affair with LTC Henry. Captain AC asked Mrs. KC to show him the messages she had exchanged with LTC Henry. Mrs. KC, instead, deleted all of the messages from her phone "because they contain[ed] information [CPT AC] should not know as [an attorney] practicing before [LTC Henry]," and because the messages contained "personal matters" that LTC Henry requested remain "confidential." At the time, CPT AC noted that the "indicators of inappropriate conduct became overwhelmingly strong over the past couple of days."

As the majority noted, CPT AC had ethical concerns related to practicing as a defense counsel before a judge so close with his wife. After raising his concerns through his technical chain of command, LTC Henry, on 8 April 2018, was removed from the bench and an investigation into his conduct followed. The then-Commander of the United States Army Legal Services Agency appointed Colonel (COL) DR to conduct the investigation. As part of the investigation, COL DR interviewed and subsequently received sworn statements from several individuals. While LTC Henry agreed to waive his rights and provide a written sworn statement, he refused to submit to an in-person interview or answer questions. When asked, he declined to provide COL DR copies of the messages he exchanged with Mrs. KC.

Colonel DR ultimately concluded that LTC Henry "was involved in a personal and emotionally intimate relationship with Mrs. [KC] between December 2017 - April 2018," and that relationship "created [an] appearance of impropriety."

*The Importance of Voir Dire*

As the majority notes, at the time of appellant's trial on the merits, the evidence demonstrates that LTC Henry and Mrs. KC frequently exchanged messages and were described as best friends. Certainly a reasonable member of the public knowing that the presiding military judge was described as best friends with the wife of a prosecuting attorney, when the military judge deliberately withheld disclosing the close friendship to the parties, would at least question the fairness of the proceedings. But, looking at the totality of the circumstances surrounding their relationship demonstrates more than a mere close friendship as the relationship evolved over time.

From December 2017 through April 2018, LTC Henry and Mrs. KC's relationship grew to the point that CPT AC accused the two of having an affair together. The two exchanged messages late into the night, met together secretively at restaurants, yoga classes, and the courthouse, were dishonest with their spouses about the frequency and nature of their interactions, and refused to allow anyone, including the investigating officer charged with determining the scope and breadth of their relationship, to view the messages they exchanged in private. Given this evidence as part of the totality of the circumstances, I am convinced that LTC Henry's relationship with Mrs. KC, coupled with LTC Henry and CPT AC's participation in appellant's court-martial, risks undermining public confidence in the military justice system, especially when the nature of their relationship was never disclosed.[11]

Absent unusual circumstances, every Army court-martial, if not all courts-martial cases throughout the Department of Defense, follow the standard script found in Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, ch. 2 (10 Sep. 2014)[12] [Benchbook], at least through arraignment. Part of that script

---

[11] LTC Henry's participation in appellant's court-martial warrants reversal, especially when one considers that Mrs. KC destroyed evidence that could shed light on the true nature of that relationship and LTC Henry refused to submit to questioning or provide evidence that could shed light on the true nature of his relationship with Mrs. KC. That said, their increasingly "personal and emotionally intimate relationship," which peaked between December 2017 and April 2018, provides context and a lens through which to view their relationship at the time of appellant's trial on the merits. Specifically, the evolution in the relationship after June 2017 provides an indication of the depth of their relationship in June 2017.

[12] The relevant sections of the current version of the Benchbook, published on 29 February 2020, are largely unchanged.

requires counsel to announce their qualifications and assert that they have "not acted in any manner that might disqualify them" from participating in the court-martial. Benchbook, paras. 2-1, 2-1-1. Critically, the military judge then informs the accused whether he, the military judge, is "aware of any matter that might be a ground for challenge against" him. Benchbook, para. 2-1-1. Lieutenant Colonel Henry did just that in this case, informing appellant: "I am not aware of any matters that might be a ground for challenge against me. However, does either side desire to question or challenge me?"[13] As LTC Henry failed to disclose his relationship with Mrs. KC, both government and defense unsurprisingly answered in the negative.

A judge's obligation to disclose a disqualifying or potentially disqualifying condition is a continuing obligation. *See* R.C.M. 902(c)(1). The purpose of making the disclosure is to afford the parties an opportunity to question (i.e., voir dire) the judge on any potentially disqualifying issues. *See*, *e.g.*, *United States v. Nieto*, 66 M.J. 146, 149-50 (C.A.A.F. 2008) (noting that voir dire "provides an opportunity to explore whether a member possesses partiality or otherwise is subject to challenge"); *see also United States v. Belflower*, 50 M.J. 306, 309 (C.A.A.F. 1999) (noting that generally, "appellate courts will not find an abuse of discretion when counsel is given an opportunity to explore possible bias or partiality"). While "[d]isclosure is no inoculation against disqualification," the absence of full disclosure leaves a record that "cannot dispel the reasonable questions of a reasonable observer about the military judge's impartiality." *United States v. Goodell*, 79 M.J. 614, 618 (C.G. Ct. Crim. App. 2019) (citation omitted).

Our Superior Court, on several occasions, has addressed the importance of disclosing potentially disqualifying issues on the record. In many of them, a full disclosure by the military judge, followed by a meaningful voir dire process, was sufficient to quell any concerns a reasonable member of the public may have about the fairness of the judicial process. *See United States v. Allen*, 33 M.J. 209, 213 (C.M.A. 1991) ("[B]y informing the parties and allowing voir dire on the issue, [an ex parte communication between the judge and the staff judge advocate to the convening authority], [the trial judge] eliminated the possibility of creating the misperception that he might not be impartial."); *United States v. Campos*, 42 M.J. 253, 262 (C.A.A.F. 1995) ("Where the military judge makes full disclosure on the record and affirmatively disclaims any impact on him, where the defense has full opportunity to voir dire the military judge and to present evidence on the question, and where such record demonstrates that appellant obviously was not prejudiced by the military judge's not recusing himself, the concerns of R.C.M. 902(a) are fully

---

[13] Appellant was arraigned on 12 May 2017, with the trial occurring on 19-22 June 2017. Lieutenant Colonel Henry's assertion of no grounds for challenge was made at appellant's arraignment, and remained unchanged throughout the proceedings.

14

met."); *United States v. Wright*, 52 M.J. 136, 141 (C.A.A.F. 1999) ("The military judge's full disclosure, sensitivity to public perceptions, and sound analysis objectively supported his decision not to recuse himself, and these factors contribute to a perception of fairness."); *United States v. Norfleet*, 53 M.J. 262, 270 (C.A.A.F. 2000) ("Based upon the nature of the issues at stake, the full disclosure by the military judge on the record of his background and approach to the case, and the opportunity provided to the defense to voir dire the military judge, we are confident that appellant received a fair trial presided over by an impartial military judge and that a reasonable observer with knowledge of all the facts would not question the military judge's impartiality.").

As noted above, full disclosure of any matter that might be a basis for challenge coupled with voir dire may, and often does, dispel any perception that the military judge was partial or disqualified. Critically, that did not occur in appellant's case. Rather, the military judge chose to mislead appellant regarding the purported absence of potential grounds for challenge, thus effectively depriving appellant of the opportunity to voir dire the military judge on his relationship with Mrs. KC. Aware of no grounds for challenge and having no apparent reason to voir dire the military judge, appellant was deprived of the right to seek recusal by a judge whose relationship with the prosecutor's wife was growing so close that the prosecutor was introduced as the husband of LTC Henry's best friend.

As Justice Brandeis noted, "Sunlight is said to be the best of disinfectants."[14] Rather than open the blinds and shed light on the issue, LTC Henry kept all trial participants in the dark. When others sought to open the blinds, albeit later, LTC Henry did everything he could to keep them closed.

After considering the totality of the facts and circumstances, including the absence of material prejudice, a panel acting as the finder of fact, the nature of LTC Henry's relationship with Mrs. KC at the time of appellant's court-martial, the progression of their relationship after June 2017, LTC Henry and CPT AC's participation in appellant's court-martial, and LTC Henry's failure to disclose the relationship which abdicated appellant's ability to voir dire LTC Henry, I agree with the majority that LTC Henry's involvement in appellant's case risks the loss of public confidence in the military justice system.[15]

---

[14] Louis D. Brandeis, *Other People's Money--and How the Bankers Use It (1914), Ch. V, available at* https://louisville.edu/law/library/special-collections/the-louis-d.-brandeis-collection/other-peoples-money-by-louis-d.-brandeis.

[15] In *United States v. Anderson*, this court identified several relevant facts in that case that led it to conclude LTC Henry was not disqualified from presiding as the

(continued . . . )

As the Supreme Court noted in 1955:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be . . . permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.' Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'

*In re Murchison*, 349 U.S. 133, 136 (1955). Here, LTC Henry's participation in appellant's court-martial caused it to lack "the appearance of justice," and the only appropriate remedy is to set aside appellant's guilty findings and sentence.

### *The Dissent's Treatment of Post-Adjournment Facts and Circumstances and Misapplication of the Third Liljeberg Prong*

#### *A. Facts and Circumstances*

The dissent notes:

> A reasonable member of the public should be apprised that: (1) LTC Henry and Mrs. KC frequently exchanged

---

(. . . continued)
judge. 79 M.J. 762, 766 (Army Ct. Crim. App. 2020). Here, many of those relevant facts cut the other way, including: (1) the nature of LTC Henry's relationship with Mrs. KC at the time of appellant's trial (best friends); (2) the locality of appellant's court-martial (Fort Benning, Georgia); (3) CPT AC's participation in appellant's court-martial; and (4) the evolution of LTC Henry and Mrs. KC's relationship after appellant's court-martial, which provides context on how to view their relationship at the time of appellant's court-martial.

> messages in June 2017 and were described as best friends at the Fort Benning staff judge advocate's farewell party, date unknown, but probably near the time of appellant's court-martial; (2) an investigator did not find LTC Henry created an appearance of impropriety by engaging in an emotionally intimate relationship with Mrs. KC until December 2017 . . . .

While I agree "a reasonable member of the public should be apprised" that LTC Henry and Mrs. KC were best friends at or near the time of appellant's trial, they should also be apprised of what followed, to include but not limited to: the efforts taken by both LTC Henry and Mrs. KC to be alone with each other; the deceit practiced by each towards their respective spouses; and the efforts taken by both to ensure that the true nature of their relationship, be it innocent or otherwise, was never discovered (e.g., deletion of messages and/or refusal to provide messages when asked). In short, the "totality of the facts and circumstances" the dissent relies upon in reaching their conclusion should include all facts and circumstances, not just those up to adjournment of appellant's case. *See Berman*, 28 M.J. at 618; *Kish*, 2014 CCA LEXIS 358.

This entire court, including the dissent, agrees that LTC Henry was disqualified from presiding as the military judge in appellant's case. The only difference of opinion lies in whether a remedy is necessary to ensure public confidence in the military justice system. In my view, and given that one of the most fundamental and well-founded constitutional rights is at stake in this case, namely the right to a fair and impartial judge, the old baseball adage should apply: "tie goes to the runner."

In finding that a remedy is not required for LTC Henry's lack of disclosure, the dissent, in large part, relies on COL DR's establishment of a date range regarding LTC Henry's impropriety, "between December 2017 - April 2018," and the absence of evidence establishing any impropriety before that period. First, this court is not bound by the period established by COL DR's investigation. Second, that COL DR was unable to establish a more exact (i.e., sooner) date of impropriety is due, in no small measure, to Mrs. KC's and LTC Henry's active efforts to conceal the nature of their relationship, their willingness to destroy evidence (e.g., text messages) that could shed light on the relationship, and, perhaps most importantly, LTC Henry's refusal to fully cooperate with the investigating officer. Lieutenant Colonel Henry refused to submit to a personal interview or to answer interrogatories. Instead, LTC Henry provided only an eleven-sentence statement that amounts to

nothing more than a denial of wrongdoing.[16] When asked by COL DR to produce the messages between himself and Mrs. KC, he declined.[17] While the dissent argues this view of the totality of the circumstances is "speculative," it is, in my view, inappropriate to use any lack of evidence caused by LTC Henry and Mrs. KC's withholding and/or destruction of evidence to appellant's detriment.

At best, the dissent relies on COL DR's "deathly silence" as positive proof of propriety in June 2017. I do not see it that way. Just like an acquittal is not proof of innocence, *see United States v. Watts*, 519 U.S. 148, 155 (1997) ("acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt") (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984)); *United States v. Truss*, 70 M.J. 545, 546 (Army Ct. Crim. App. 2011) (trial judge's findings excepting the words "by force and without consent" from a guilty sodomy finding does not amount to proof that the sodomy was consensual, rather amounts to a failure of proof by the government), a finding of misconduct on a date certain by an investigating officer does not amount to proof of no wrongdoing before that date. This is especially true

---

[16] LTC Henry's statement reads:

> [Mrs. KC] and I were friends introduced through my wife. My wife and [Mrs. KC] were, and continue to be, friends. My wife supported this friendship, and–as [Mrs. KC] indicated to me–CPT [AC] did as well. [Captain AC] appeared in front of me as a trial counsel in November [2017] for [*United States v. Teer*]. This was a guilty plea. [Captain AC] also appeared in front of me as trial counsel in December [2017] for [*United States v. Springer*]. This was a contested panel case. He has not appeared in front of me as a defense counsel. At no time has anyone ever questioned or inquired into my relationship with [Mrs. KC]. Until notification of this investigation, I was not informed, formally or informally, that our friendship was an issue. At no time did my friendship with [Mrs. KC] impact my ability to be a fair and impartial judge.

[17] This analysis is not meant to, in any way, diminish an accused service member's right against self-incrimination guaranteed by Article 31(b), UCMJ, and the Fifth Amendment. Instead, given our charge in this case to determine how a reasonable member of the public would view the totality of the circumstances of whether appellant received a fair trial, it is necessary to consider how forthcoming LTC Henry was when presented with the allegations of his relationship with Mrs. KC. A totality of the circumstances means just that—all relevant facts and circumstances.

when considering the efforts undertaken by Mrs. KC to destroy evidence and LTC Henry's unwillingness to cooperate with COL DR.

### B. Third Prong of Liljeberg

Finally, I address the dissent's comment that:

> . . . (3) after a close review of the record our appellate court has not 'identified any rulings or decisions in appellant's case that appear to spring from LTC Henry's failure to disqualify himself or disclose his relationship with Mrs. KC,' and (4) after correct legal instruction an impartial enlisted panel decided appellant's guilt and sentence.

The above quoted language is nothing more than a restatement of that which the majority found, an absence of any material prejudice to appellant by LTC Henry presiding over appellant's case. The majority noted, "[w]e do not find that appellant suffered material prejudice to a substantial right." Where the majority and dissent part ways, is in the latter's application of the third *Liljeberg* prong. The former, considering the totality of the circumstances, finds that a reasonable, disinterested, well-informed, objective observer, with knowledge of all the facts and circumstances, would lose confidence in the military justice system were this court to affirm appellant's conviction. I agree. The dissent, giving little consideration to what transpired after appellant's court-martial, concludes that confidence in the military justice system would be eroded by providing relief in the case at bar. I obviously disagree.

Most concerning is the dissent's apparent reliance and reiteration that appellant suffered no material prejudice as a result of LTC Henry's failure to disqualify himself. What the dissent ignores, in my view, is that the third prong of *Liljeberg* is separate and distinct from a material prejudice inquiry. *See United States v. Martinez*, 70 M.J. 154, 159 (C.A.A.F. 2011) ("[W]e look to see if the error materially prejudiced the substantial rights of the appellant and whether, under *Liljeberg*, reversal is warranted. We conduct both inquiries even if we conclude that there is no Article 59(a) prejudice as it is possible that an appellant may not have suffered any material prejudice to a substantial right, but that reversal would still be warranted under *Liljeberg*."). Essentially, the dissent conflates the two separate tests and concludes that, in large part, because appellant was not prejudiced, he is not entitled to a remedy. I view this analysis as a misapplication of the tests laid out by our two Superior Courts.

I have absolutely no doubt that ten out of ten accused soldiers, one-hundred percent, would not want their military judge to be "besties" with the prosecutor's

wife, regardless of whether the forum ultimately chosen was members or judge-alone.  Likewise, one-hundred percent of those in the public would question the "justice" in "military justice" were we to affirm appellant's conviction when considering *all*[18] the facts and circumstances surrounding the relationship between Mrs. KC and LTC Henry.

---

[18] That aspects of the relationship remain undisclosed is without question.  During a post-trial Article 39(a), UCMJ, session into whether LTC Henry was disqualified from sitting as the military judge in another accused's case (*United States v. Rudometkin*; *see* note 5, *supra*), defense counsel sought a line of inquiry that counsel asserted was relevant to "whether there was more than an inappropriate relationship" between LTC Henry and Mrs. KC.  Rather than answer the inquiry, CPT AC invoked the marital privilege to refuse to provide arguably relevant information.  While this invocation in no way influences my vote in this case, I point this out simply to highlight that even after an administrative investigation into LTC Henry's relationship with Mrs. KC, reasonable, disinterested, well-informed, objective observers, are *still left without* the knowledge of all relevant facts and circumstances.  Unfortunately, this time the individual keeping said information from the decision makers is the affected prosecutor, CPT AC, albeit for possibly compelling reasons; that is, to try and salvage his marriage from the adverse effect brought to bear by LTC Henry.

Judge FLEMING, dissenting, joined by Judge SALUSSOLIA and Judge SCHASBERGER:

We agree with our colleagues that LTC Henry should have disclosed his relationship with Mrs. KC. We do not find, however, after a review of the totality of the facts and circumstances, that his involvement in appellant's case risks undermining the public's confidence in the military justice system and requires reversal under *Liljeberg*. First, we discuss our concerns with the majority's analysis of the facts and circumstances and we then focus on the facts and circumstances leading to our conclusion.

The majority asserts their opinion "rests squarely upon the facts as known at the time of appellant's court-martial." The majority's "most critical" fact, or from our viewpoint, the sole fact upon which their opinion "rests squarely" is "[a]t the Fort Benning staff judge advocate's farewell party in 'the summer of 2017,' LTC Henry's wife introduced CPT AC as her 'husband's best friend's husband.'"[19]

As to the evolution of the relationship to provide "a lens through which to view the nature of the relationship at the time of appellant's trial," the majority appears to reference interactions between LTC Henry and Mrs. KC which occurred from between December 2017 to April 2018. A timeframe removed from appellant's court-martial by at least six months. If this relationship is so problematic to appellant's court-martial, why does the majority give such a short description of the relationship during the most relevant timeframe of June 2017?

The explanation for the short description is an investigation, conducted two years prior to this court's opinion, which ultimately concluded "LTC Henry created [an] appearance of impropriety by engaging in an emotionally intimate relationship with [Mrs. KC] [from] between December 2017 - April 2018"—a finding by the investigator based on interviewing and receiving sworn statements from several individuals. Despite the following: (1) the investigator's deathly silence as to the appearance of any impropriety in June 2017; July 2017; August 2017; September 2017; October 2017; and November 2017; (2) the majority's inability to reference another specific fact before or during the time of trial, beyond their sole "most critical" fact; and (3) the majority's failure to reference any other specific fact after

---

[19] The majority's reference to "[l]ater in the summer, Mrs. KC invited LTC Henry and his wife to dinner at her house [. . . and they] and their daughter eventually went to dinner at Mrs. KC's house in *November 2017*" does not appear to squarely include "facts as known at the time of appellant's court-martial" in June 2017. (emphasis added).

trial until December 2017 – this court still finds the nature of the relationship at the time of appellant's court-martial warrants reversal.

The majority and concurrence's reliance upon the evolution of the relationship after June 2017 to support an indication of the depth of their relationship in June 2017 is speculative. Almost all, if not all, the facts used by the majority to support this depth of relationship evolution theory occurred on or after December 2017. Because a certain relationship existed in December 2017, it does not per se establish a crystal "lens through which to view the nature of the relationship" in June 2017.

The majority opinion focuses almost exclusively on LTC Henry's relationship with Mrs. KC and CPT AC's participation in appellant's court-martial, and provides scant weight to the entire trial and appellate proceedings. *See United States v. Martinez*, 70 M.J. 154, 160 (C.A.A.F. 2011) (citations omitted). As to the entire trial and the appellate proceedings, the majority, like us, have not "identified any rulings or decisions in appellant's case that appear to spring from LTC Henry's failure to disqualify himself or disclose his relationship with Mrs. KC." Further, as to the entire trial, an impartial enlisted panel determined appellant's guilt and sentence. The relationship is only one factor, albeit important, in reviewing the totality of the circumstances and viewing the issue through the eyes of a reasonable member of the public.

A reasonable member of the public should be apprised that: (1) LTC Henry and Mrs. KC frequently exchanged messages in June 2017 and were described as best friends at the Fort Benning staff judge advocate's farewell party, date unknown, but probably near the time of appellant's court-martial; (2) an investigator did not find LTC Henry created an appearance of impropriety by engaging in an emotionally intimate relationship with Mrs. KC until December 2017; (3) after a close review of the record our appellate court has not "identified any rulings or decisions in appellant's case that appear to spring from LTC Henry's failure to disqualify himself or disclose his relationship with Mrs. KC;" and (4) after correct legal instruction, an impartial enlisted panel decided appellant's guilt and sentence.

After considering the totality of the facts and circumstances and applying a reasonable member of the public standard, affirming appellant's conviction for larceny and assault, among other offenses, would not undermine the public's confidence in the military justice system. We could find, if required, reversing appellant's conviction would risk undermining the public's confidence in the military justice system.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court