# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WALKER, HAYES, and PARKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E2 NATHANIEL I. GILKEY**
**United States Army, Appellant**

ARMY 20210440

Headquarters, 19th Expeditionary Sustainment Command
Christopher E. Martin, Military Judge (arraignment)
Jeffrey W. Hart, Military Judge (motions and trial)
Lieutenant Colonel Carol A. Brewer, Staff Judge Advocate

For Appellant: Colonel Michael C. Friess, JA; Captain Sean P. Flynn, JA; Jonathan F. Potter, Esquire; Major Bryan A. Osterhage, JA; Captain Sean Patrick Flynn, JA (on brief); Colonel Michael C. Friess, JA; Lieutenant Colonel Dale C. McFeatters, JA; Major Bryan A. Osterhage, JA; Captain Sean P. Flynn, JA (on reply brief); Colonel Philip M. Staten, JA; Major Robert W. Rodriguez, JA; Captain Kevin T. Todorow, JA (on brief on specified issue).

For Appellee: Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Kalin P. Schlueter, JA; Captain Melissa A. Eisenberg, JA (on brief); Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Kalin P. Schlueter, JA; Captain Patrick S. Barr, JA; Captain Alex J. Berkun, JA (on brief on specified issue).

19 January 2024

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WALKER, Senior Judge:

The military judge erred when he failed to recuse himself due to actual bias and the appearance of bias. His personal bias[1] was a product of his experience as a

---

[1] Rule for Courts-Martial 902(b)(1).

victim of a similar crime and was demonstrated by his conduct during the proceedings, all of which raise doubt as to the court-martial's legality, fairness, and impartiality. We, therefore, set aside appellant's findings and sentence.[2]

## BACKGROUND

### A. Appellant's Offenses

Appellant's offenses involved his taking advantage of a male friend of his younger brother. The victim was good friends with appellant's younger brother, and it was primarily through his brother that appellant came to know the victim. Appellant also interacted with the victim during his senior high school football team scrimmages with the junior high team, of which the victim was a member.

After graduating from high school in 2018, appellant joined the Army and trained to become a military police officer. In approximately October 2018, appellant invited the victim to connect with him on the social media platform Snapchat which the victim accepted. Initially, the two of them communicated about hunting and video games. At the time of these communications, the victim was only 14 years old.

In January 2019, the victim received a request to connect with someone on Snapchat with the account name of a girl with whom the victim was familiar, so he approved the request. When the victim inquired about a photo of the girl, he was sent a video of a girl masturbating. The victim testified that the girl in the video appeared young, but her face was not visible in the video. The person then asked for a photo of the victim. He responded by sending a close-up photo of his genitals. Immediately after sending the photo, the victim felt uncomfortable and blocked the other account from communicating with him.

The following morning, the victim noticed several Snapchat messages and missed phone calls from appellant. In the messages, appellant told the victim that he was in trouble and that appellant was coming in a few weeks to arrest him. Appellant further advised the victim that he could get out of trouble if he became a confidential informant for the military. Frightened, the victim agreed to cooperate. Appellant informed the victim that he must reconnect with the purported female

---

[2] We have fully and fairly considered appellant's Assignments of Error II and III, and the matters personally submitted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find they warrant neither discussion nor relief. Assignment of Error I and *Grostefon* matters VI, VII, VIII, X, and XII are rendered moot by our opinion.

account and do whatever the person requested. While the victim was at school, the female Snapchat account sent a message to the victim requesting that he go to the bathroom and send more photos of his genitals. The victim testified that he complied and sent the account four to five photos of his genitals and then again blocked the account. Later that afternoon, appellant sent a message to the victim to unblock the female Snapchat account. There were several additional instances in which the victim sent photos or videos of himself to the female Snapchat account and then immediately blocked the account. Each time the victim blocked the account, he received a message from appellant instructing him to unblock the account.

Later in January 2019, the Yell County, Arkansas sheriff's office received a call from a person claiming to be from Army Criminal Investigation Command (CID) requesting to speak with a sheriff. A deputy sheriff spoke with an individual who identified himself as Special Agent (SA) Gilkey and stated that CID was conducting a child pornography investigation in Danville, Arkansas. The deputy sheriff contacted the local high school resource officer and informed him about that conversation. The resource officer contacted the phone number provided by the deputy sheriff and spoke with a male who identified himself as an officer from the state police. During the conversation, the resource officer recognized the voice and believed it to be appellant. When confronted, appellant admitted to his identity. Appellant informed the resource officer that he was working a case in which there could possibly be a kidnapping from the school and he also mentioned a child pornography case. Knowing that appellant had joined the military, the resource officer asked for the contact information for appellant's commander. When the resource officer spoke with someone purporting to be appellant's supervisor, he could tell the person was disguising his voice and testified the voice sounded like appellant.

Approximately three months passed in which the victim was not contacted by the female Snapchat account. In late May 2019, appellant contacted the victim via Snapchat and informed him that the female Snapchat account was a military account used to catch pedophiles and the account had been hacked and the victim needed to reconnect with the account. As soon as the victim complied, the account messaged the victim and instructed him to send more photos of his genitals. The account further requested videos of the victim masturbating; the victim complied. The victim testified that during the periods of time he was communicating with the female Snapchat account, he did not receive messages from appellant. The only time the victim received messages from appellant's account was when he blocked the female Snapchat account. Soon thereafter, the victim informed his mother of what had been occurring and she reported it to local law enforcement.

Appellant was charged with one specification of impersonating an agent of the U.S. Army CID, one specification of sexual abuse of a child, one specification of

obstruction of justice, two specifications of distribution of child pornography, three specifications of possession of child pornography, and one specification of production of child pornography, in violation of Articles 106, 120b, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 906, 920b, and 934.

### B. *The Military Judge's Background and Conduct*

Appellant was arraigned in October 2020. A pretrial hearing was held in December 2020 by a different military judge who presided over the remainder of appellant's trial. During that pretrial hearing, the military judge informed the parties that he was not aware of any grounds for challenge against him. In response, both parties declined the opportunity to voir dire the military judge.

In January 2021, defense counsel requested a hearing for conducting voir dire of the military judge. During voir dire, defense counsel inquired as to whether the military judge or a member of his family had been the victim of a similar offense to those with which appellant was charged. At first, the military judge responded in the negative but then requested that the defense counsel describe the charged offenses. The military judge then disclosed that approximately fifty years prior, when he was about seven years old, he was sexually abused by a 65-year-old Boy Scout troop leader. The military judge stated that he did not consider that to be a similar offense based upon the underlying facts of appellant's case as he understood them, given there was no physical contact alleged in appellant's charged offenses. The military judge further stated that he did not believe the incident that happened to him impacted his daily life. He explained that the only time he ever thought about the incident was during training on voir dire as a military judge and had concluded that it was something he should disclose to the parties. Defense counsel affirmatively declined any objection to the military judge serving on appellant's case. At a subsequent pretrial hearing, the military judge again gave the parties the opportunity to challenge him and both parties declined. At that same hearing, appellant elected to be tried by military judge alone.

At trial, the government admitted appellant's lengthy video recorded statement to CID totaling approximately 4 hours and 37 minutes. Approximately 40 minutes of the recording consisted of obtaining administrative data from appellant, appellant sitting alone in the interview room for a short period, and a period at the conclusion of the interview of just an empty room. The government published several excerpts from appellant's CID interview during the trial, totaling approximately 37 minutes. Defense counsel highlighted during closing argument that the CID agent used coercive techniques while interviewing appellant, including continually rejecting appellant's denials and pressing appellant for admissions to the alleged offenses. Defense counsel specifically requested that the military judge review the entire interview during deliberations. The military judge closed court at 0911 for deliberations and concluded deliberations at approximately 1230. Court

recessed until the following day, pending appellant's evaluation for mental health concerns.

Court reconvened the following day. Defense counsel requested: (1) a continuance in order to evaluate appellant's competence; (2) another sanity evaluation under Rule for Courts-martial [R.C.M.] 706; and, (3) reconsideration of the military judges denial of the defense request for an expert consultant in forensic psychology. The military judge denied all three motions from the bench and immediately announced his findings. The military judge convicted appellant, contrary to his pleas, of one specification of impersonating a U.S. Army CID agent, one specification of sexual abuse of a child, three specifications of possession of child pornography, one specification of distribution of child pornography, and one specification of production of child pornography, in violation of Articles 106, 120b, and 134, UCMJ. The military judge acquitted appellant of one of the specifications of distribution of child pornography and the specification of obstruction of justice. Defense counsel then moved for a mistrial asserting that there was substantial doubt as to the fairness and impartiality of the trial given that the military judge did not consider all the evidence. Specifically, the defense argued that the military judge only deliberated for approximately three hours and fifteen minutes and could not have reviewed the entirety of the four hours of appellant's CID interview and all documentary evidence in that amount of time. The military judge denied the defense motion for a mistrial, from the bench, while confirming that he did not consider all the evidence. Subsequently, the military judge granted the defense request for a continuance so the defense could request the convening authority grant an expert consultant for sentencing.

Trial reconvened over five months later, at which time the military judge addressed additional defense motions and conducted a pre-sentencing hearing. Prior to moving to pre-sentencing proceedings, the defense moved for reconsideration of its motion for a mistrial, citing the appellant's competency during the proceedings and the military judge's failure to review all the evidence during deliberations. As an alternative, defense counsel requested the military judge recuse himself for purposes of ruling on the motion for reconsideration if he did not believe he could be impartial in rendering a ruling. The military judge did not recuse himself and denied the motion for reconsideration. During its pre-sentencing argument, the government requested appellant be sentenced to a total of five years of confinement. The military judge sentenced appellant to a dishonorable discharge, a total of seven years of confinement, with all periods to run concurrently,[3] forfeiture of all pay and allowances, and reduction to the grade of E-1.

---

[3] The Military Judge sentenced appellant to confinement as follows:
As to Charge I and its Specification: 30 days.

(continued . . .)

## LAW AND DISCUSSION

### A. Actual vs. Appearance of Judicial Bias

"An accused has a constitutional right to an impartial judge." *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (citations and internal quotation marks omitted). "An impartial and disinterested trial judge is the foundation on which the military justice system rests, and avoiding the appearance of impropriety is as important as avoiding impropriety itself." *United States v. Berman*, 28 M.J. 615, 616 (A.F.C.M.R. 1989). To ensure every military accused receives an impartial judge, the President promulgated R.C.M. 902, which provides the framework for when a military judge must be disqualified from participating in a court-martial, whether for actual bias or the appearance of bias.

Rule for Courts-Martial 902(a) addresses the appearance of bias, placing a duty upon a military judge to "disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." Appearance bias is determined objectively. *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012).[4]

Rule for Court-Martial 902(b) outlines five specific circumstances in which a military judge is categorically disqualified from a proceeding for actual bias. The circumstances relevant to appellant's assignment of error are found in subsection (1), which mandates recusal when a military judge "has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding." R.C.M. 902(b)(1); see *Butcher*, 56 M.J. at 90 (noting R.C.M. 902(a) governs the appearance of bias while R.C.M. 902(b) governs specific disqualifying circumstances). A military judge may not accept waiver of any ground for challenge under R.C.M. 902(b). R.C.M. 902(e).

---

(. . . continued)
As to Charge II and its Specification: 3 years.
As to Specification 1 of Charge IV: 3 years.
As to Specification 3 of Charge IV: 2 years.
As to Specification 4 of Charge IV: 7 years.
As to Specification 5 of Charge IV: 2 years.
As to the Additional Charge and its Specification: 3 years.

[4] Although appellant's pleadings focus on the appearance of bias under R.C.M. 902(a), under our plenary review authority, we will also address actual bias under R.C.M. 902(b). Art. 66, UCMJ.

Disqualification for actual bias under R.C.M. 902 (b)(1), "must be based upon extra-judicial, personal knowledge, not knowledge gained through performance of judicial duties." *United States v. Black*, 80 M.J. 570, 574 (Army. Ct. Crim. App. 2020) (cleaned up). "[P]ersonal means the bias or prejudice 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Id.* (cleaned up); see *Litkey v. United States*, 510 U.S. 540, 549-551 (1994).

When a military judge's impartiality is challenged on appeal, "the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt" by the military judge's actions. *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (cleaned up). When conducting this test, we apply an objective standard of "[a]ny conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned...." *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982) (cleaned up). Allegations of partiality "must be supported by facts or 'some kind of probative evidence' which would warrant a reasonable inference of lack of impartiality on the judge's part." *Id.*

### B. Waiver of Appearance of Bias

Unlike claims based upon actual bias, disqualification under R.C.M. 902(a) is subject to waiver if there is a "full disclosure on the record of the basis for disqualification." R.C.M. 902(e); *see United States v. Quintanilla*, 56 M.J. 37, 77 (C.A.A.F. 2001) (noting appearance bias is waivable after full disclosure on the record of the basis for disqualification).

Whether an appellant has waived an issue is a legal question we review de novo. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citing *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019)). "[W]aiver is the intentional relinquishment or abandonment of a known right. *Id.* (quoting *United States v. Galdue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (internal quotations marks omitted)). While we review forfeited issues for plain error, "we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal." *Id.* (quoting *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (internal quotation marks omitted)).

Appellant concedes, and we agree, appellant waived any objection for disqualification of the military judge under R.C.M. 902(a) for apparent bias when the military judge revealed the disqualifying information on the record and appellant declined to request recusal. *Davis*, 79 M.J. at 332. Appellant exercised his right to voir dire the military judge who disclosed that he was a victim of child sexual abuse fifty years prior to appellant's court-martial. The military judge answered several follow-up questions about the nature and details of the abuse and whether it

currently impacted the military judge. We find that there was disclosure on the record of a potential basis for disqualification of the military judge under R.C.M. 902(a). After completing voir dire, defense counsel requested a recess to consult with appellant. Upon reconvening, appellant affirmatively declined to challenge the military judge. Appellant was also provided another opportunity to challenge the military judge at a subsequent pretrial hearing and again affirmatively declined to challenge the military judge. Appellant, knowing the military judge who had been subject to sexual abuse as a child would preside over his trial, elected to be tried by that military judge.

As appellant has affirmatively waived any objection to the military judge's potential disqualification for an appearance of bias, there is nothing left for us to correct on appeal pertaining to any *appearance* of bias by the military judge absent the exercise of our Article 66(d), UCMJ, authority to pierce through appellant's waiver. In contrast to our superior court's review authority under Article 67, Article 66(d), UCMJ, prescribes a duty to service courts to affirm only such findings of guilty as we find correct in law and fact and that we determine, on the basis of the entire record, should be approved.[5] Our superior court has referred to this authority as a service court's "awesome, plenary, de novo power of review," *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990), further describing the service courts as having a "carte blanche to do justice." *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991). We have previously held that, even when affirmative waiver would otherwise render panel instructions correct in law, the third "should be approved" prong of Article 66, UCMJ, "allows us to, in our discretion, treat a waived or forfeited claim as if it had been preserved at trial." *United States v. Conley*, 78 M.J. 747, 750-51 (Army Ct. Crim. App. 2019) (citing *United States v. Britton*, 26 M.J. 24, 27 (C.M.A. 1988)).

When exercising this Article 66(d), UCMJ, power, our superior court has endorsed the approach of considering whether the issue was waived and then deciding whether to address the matter under Article 66(d). *United States v. Hardy*, 77 M.J. 438, 442 (C.A.A.F. 2018).[6] The *Hardy* court left undisturbed the holding in *United States v. Quiroz* that a service court may use its Article 66, UCMJ, power to address a waived issue. *See Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001).

---

[5] We are cognizant that under the current version of Article 66, effective 1 January 2021, we no longer retain the "should be approved" discretion to reach waived claims. This case, however, is governed by the prior version of Article 66 in effect at the time of referral.

[6] The *Hardy* case was decided under the 2016 Manual for Courts-Martial [M.C.M.] in which the court's review power was delineated in Article 66(c), UCMJ.

Despite the clear affirmative waiver in this case, our Article 66(d), UCMJ, review compels us to affirm only such findings of guilty as we find correct in law and fact and that we determine, *on the basis of the entire record, should be approved* (emphasis added). For all the reasons cited herein, we find the significance of the right to an impartial judge worthy of piercing waiver in this case.

*C. The Military Judge Was Disqualified for Both Actual and the Appearance of Bias*

If an appellant, as in this case, does not raise the issue of disqualification until appeal, we examine the claim under the plain error standard of review." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citing *United States v. Jones*, 55 M.J. 317, 320 (C.A.A.F. 2001)). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *Id.* (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)). If we determine the military judge should have disqualified himself, we then analyze the facts to determine if the error was harmless. "In a plain error context we look to see if the error materially prejudiced the substantial rights of the appellant" pursuant to Article 59(a), UCMJ. *Martinez*, 70 M.J. at 159.

In reviewing the entirety of the record, we conclude that there is probative evidence warranting a reasonable inference of the military judge's lack of impartiality. *United States v. Pearson*, 2019 CCA LEXIS 462, *19 (Army Ct. Crim. App. 18 Nov. 2019) (mem. op.) ("[d]etermining whether a military judge is biased, or could be perceived as such, however, is not a mathematical equation resolved based on the percentage of rulings granted for the defense or the government but instead requires a holistic review of the record.") Specifically, we find the military judge's (1) initial failure to disclose potentially disqualifying information on two separate occasions, (2) inconsistent and contradictory descriptions of the potentially disqualifying information, (3) government favorable rulings on admission of evidence without requiring the government to provide the basis for admission, (4) failure to require the government to comply with rules of evidence related to testimony about Snapchat images and videos, (5) admitted failure to review all the evidence, (6) failure to appreciably consider a motion for a mistrial, and (7) imposition of a term of confinement well in excess of the government's request to be indicative of the military judge's personal bias in this case. The totality of these errors demonstrates the military judge lacked impartiality and erred in failing to recuse himself.

First, we note that the military judge failed to voluntarily disclose the extrajudicial source of his bias, which was his prior sexual abuse by a Boy Scout leader, a crime with similarities to appellant's charged offenses. While appellant's case did not involve physical sexual abuse, it certainly involved the manipulation of a position of trust and an adult abusing a minor. Just as one would trust a Boy Scout leader as someone to mentor and lead young boys, so too would a minor look to the

older brother of a friend who played on a senior sports team and was serving in the military as a person with some inherent trust. A reasonable person would find that the military judge's sexual abuse was similar enough in nature to the charged offenses to warrant disclosure, despite the considerable gap in time and the military judge's view to the contrary. The military judge admitted that his prior abuse came to mind during his judicial training, yet he failed to voluntarily disclose this information on the record, instead disclaiming any knowledge of disqualifying information. When defense counsel requested a subsequent pretrial hearing for the sole purpose of conducting voir dire, the military judge noted for the record that he had previously allowed both parties the opportunity to voir dire him and that each party declined. The military judge then inquired whether anything had changed since the prior hearing necessitating voir dire and required defense counsel to justify the lack of inquiry when initially provided the opportunity. Defense counsel explained that due to a motion discussed at the prior hearing, he was not focused on voir dire at that time. Ultimately, the military judge granted the defense request for voir dire and disclosed his abuse but was not particularly forthcoming and, in some instances, contradictory regarding details of the incident. At this point, the military judge should have recognized his personal bias and his disqualification from serving on this case.

Upon a review of the record in its entirety, we find the military's judge's failure to recuse himself from this case due to personal bias or prejudice against appellant, a suspected child sex offender in a position of trust, is plain and obvious. The military judge's rulings pertaining to admission of certain government evidence reflected his bias. Appellant was charged with production of one video and one digital image of child pornography. Defense objected to the victim's testimony of multiple requests to send images of his genitals to a Snapchat account controlled by appellant. Specifically, defense counsel asserted that evidence of more than one video or image was uncharged misconduct under Military Rule of Evidence [Mil. R. Evid.] 404(b) and prejudicial under Mil. R. Evid. 403. The military judge initially overruled the objection without requesting any justification of relevance from the government. He also overruled the renewed objection under Mil. R. Evid. 404(b), noting "the court's not in a position to determine which evidence ties into the charges" and then summarily ruled that the testimony was not unduly prejudicial with no analysis. Appellant was also charged with both distribution and production of one video and one digital image of child pornography. Over defense objection, the military judge admitted multiple images and videos for each of these specifications, holding that the government was not required to provide specific notice as to which image or video it was selecting out of the entire cache that served as a basis for those charged offenses. While the military judge was correct in that the military is a notice pleading jurisdiction, he never required the government sufficiently justify the relevancy of admitting multiple videos and images for the possession and distribution offenses or identify which of the multiple images the government believed satisfied the definition of child pornography.

More concerning is the potential impact of the military judge's decision to admit multiple images and videos supporting the possession, distribution, and production of child pornography. The military judge then failed to specify which image or video of the multiple videos and images admitted at trial appellant was convicted of possessing, producing, and distributing when announcing his findings. *United States v. Ross*, 68 M.J. 415, 417 (C.A.A.F. 2010). ("If there is no indication on the record of which of the alleged incidents forms the basis for the conviction, then the findings of guilty are ambiguous and the Court of Criminal Appeals cannot perform a factual sufficiency review." *United States v. Wilson*, 67 M.J. 423, 428 (C.A.A.F. 2009) (citation omitted). The military judge's failure to require the government to identify with specificity which image or video it was asserting supported each specification was further evidence of a continuing disregard for the high burden the government bears to prove beyond a reasonable doubt, with a certain degree of specificity, every element of each offense.

The military judge also ignored potential deficiencies in the charged offenses which we attribute to his personal bias. The specification for impersonating an agent of CID does not appear to state an offense. The specification merely alleges that appellant telephoned a sheriff's department and stated he was a member of CID.[7] *United States v. Yum*, 10 M.J. 1, 9 (C.M.A. 1980) (holding that the specification must contain "not only an allegation and a showing of the pretense of authority, but also the allegation and showing of an act which 'must be something more than merely an act in keeping with the falsely assumed character.'") (citations omitted); *United States v. Felton*, 31 M.J. 526, 530 (finding that the evidence established an overt act beyond the mere pretense of authority in that appellant used that authority to intimidate a female into meeting with him) (holding the charged specification deficient in that it only alleged a bare false representation and nothing more); *United States v. Hall*, 25 M.J. 628 (A.F.C.M.R. 1987); *United States v. Adams*, 14 M.J. 647 (A.C.M.R. 1982) (holding specification sufficient because it alleged false representation and an overt act of attempting to purchase codeine). The specification, as in this case, must contain more than a bare false representation that appellant asserted he was an Army CID agent.

The military judge's admission of the victim's testimony about the images and videos he exchanged with appellant without requiring the government to satisfy Mil.

---

[7] The specification states, "In that Private (E2) Nathaniel I. Gilkey, U.S. Army, did, at or near Camp Humphreys, Republic of Korea, on or about 22 January 2019, wrongfully and willfully impersonate an agent of the Army Criminal Investigation Division by telephoning the Yell County Sheriff's Department and stating that he was Special Agent Gilkey, a member of the United States Criminal Investigation Division."

R. Evid. 1002 and 1004 is another example of the military judge failing to hold the government to its high burden, which we again find indicative of a personal bias or prejudice. The victim testified that appellant sent him a video via Snapchat of what appeared to be a minor female masturbating. The video itself was never admitted at trial. The victim also testified he sent several Snapchat photos of his genitals and a video of him masturbating to a Snapchat account, allegedly controlled by appellant, without the government admitting a copy of the images or video. Several months later, when the victim reported his exchange of sexually explicit images and videos with appellant, he informed law enforcement this was accomplished via Snapchat. The government did not present any testimony that either civilian law enforcement or CID made any attempts to recover the images or videos from Snapchat or from the victim's phone. The CID agents working the case seized appellant's cellphone but never conducted a full forensic or logical extraction of the phone, and thus none of the images or videos to which the victim testified were recovered or admitted at trial.[8] Yet, the government elicited testimony from the victim describing the Snapchat images and videos without any defense objection.

Military Rule of Evidence 1002 states "[a]n original . . . recording . . . is required in order to prove its content" unless an exception applies.[9] In this case, Mil. R. Evid. 1004 could have provided the requisite exception. The two applicable options required the government to either show the original was "lost or destroyed" or the original could not be "obtained by any available judicial process." Mil. R. Evid. 1004(a)-(b). The first exception requires the government to show "[a]ll the originals are lost or destroyed, and not by the proponent acting in bad faith." Mil. R. Evid. 1004(a). The other exception allows evidence of the content of a recording when an original cannot be obtained by any available judicial process. Mil. R. Evid. 1004(b). The military judge did not require the government to satisfy either of the exceptions outlined in Mil. R. Evid. 1004 but rather, freely allowed the government to present testimony of the videos and images the victim exchanged with appellant. Allowing the victim's testimony without satisfying the requirements of Mil. R. Evid. 1002 and 1004 lowered the government's burden in this case pertaining to the offenses of production of child pornography and sexual abuse of a child.

---

[8] We recognize that the images and videos may not have been recovered even if law enforcement conducted a full forensic extraction. However, the rule required the government to demonstrate the images and videos were unrecoverable.

[9] *United States v. Grindstaff*, 2022 CCA LEXIS 524 (Army Ct. Crim App. 30 Nov. 2022)( (mem. op.) (holding the military judge abused his discretion in admitting testimony of a Snapchat video over defense objection when the government failed to satisfy either of the exceptions for admission under R.C.M. 1004).

Most concerning is the issue of the military judge failing to review all the evidence in this case, by his own admission. The government admitted the video recording of appellant's CID interview which consisted of approximately 4 hours in which there was substantive questioning. The government only published approximately 37 minutes of those 4 hours during the trial. In closing argument, defense counsel requested the military judge review the entirety of the video asserting that law enforcement used coercive interview techniques to garner appellant's admissions. The military judge only deliberated for approximately 3 hours and 20 minutes, the approximate length of the CID interview not published during trial. While we recognize that there is a presumption that the judge correctly applied the law in making an independent judgment in the case, the military judge admitted he did not review the video during deliberations. *United States v. Littlewood*, 53 M.J. 349, 354 (C.A.A.F. 2009). When the defense counsel requested a mistrial on the basis that the military judge had not deliberated long enough to review the entirety of the CID interview, the military judge denied the motion from the bench, without any appreciable deliberation, stating,

> The video of the accused included according – the assertions that were made in court was that the video included a lengthy break in the beginning and the part at the end. So, the defense made a tactical decision whether to play the entire video in court, when it certainly had the option of doing that, elected not to do so. So, the defense's motion under 915 is denied.

The military judge's response certainly indicates that he did not review the entire video as the defense requested. More disturbing is the military judge's placing the burden on the defense counsel to publish a video that was admitted by the government in support of its burden to prove the offenses beyond a reasonable doubt. Failing to review the entire video, despite defense's request to do so, deprived appellant of the fact-finder considering potential exculpatory and mitigating evidence during the merits portion of the trial. We note that in a ruling on a motion to reconsider the motion for mistrial, the military judge asserted that he had reviewed the entire video and "quickly forward[ed] through portions of the recording that were neither helpful to the Defense, the Government or the Court." Given that this assertion was made in a written ruling several months after the announcement of findings, and upon reflection, we give that statement considerably less weight than the statement the military judge made on the record soon after the announcement of findings, which clearly indicated he believed he was not required to review all the admitted evidence if it was not published in open court.

The military judge's personal bias or prejudice against appellant, while *demonstrated* throughout the proceedings, *arose* from his own abuse as a child from a male adult in a position of trust. As stated, appellant was a male adult in a position of trust. We find no authority for the proposition that personal bias or

13

prejudice must concern *only* that party. We find, when determining whether actual bias exists, that it is sufficient that appellant is a member of that class of people that the factfinder holds a personal prejudice against.

For the foregoing reasons, we find a reasonable person, knowing all the circumstances, would question the military judge's impartiality in appellant's case. More specifically, we find the military judge was disqualified from presiding over appellant's case due to his personal bias under R.C.M. 902(b)(1). The military judge committed plain error in failing to recuse himself because an accused is entitled to an impartial judge, personal bias or prejudice requires a judge's disqualification, and the military judge failed to disqualify himself. In the absence of actual bias under RCM 902(b)(1), we would also find plain error for an appearance of bias for all of the same reasons, and we would pierce waiver in this case because of the magnitude of the right impacted – appellant's right to an impartial judge.

### D. Material Prejudice to Appellant's Substantial Rights

Having determined that the military judged erred in failing to recuse himself under both actual and apparent bias, we must turn to whether this error materially prejudiced a substantial right of appellant.

Appellant was entitled to an impartial judge and was denied that right in this case resulting in the military judge failing to hold the government to its high burden of proof and threshold requirements for admission of evidence. The military judge's bias impacted his rulings on defense objections when the government sought admission of multiple images or videos of suspected child pornography despite having only charged appellant with possession, production, and distribution of child pornography of one image or video in Specifications 1, 4, and 5 of Charge I. These rulings prejudiced appellant when the military judge found appellant guilty of those specifications but failed to identify which specific image or video of which appellant had been found guilty, potentially adversely impacting appellant's right to a legal and factual sufficiency review by this court and protection against double jeopardy. The judge's personal bias also resulted in appellant being convicted of a potentially facially deficient specification of impersonating a CID agent. The military judge also failed to require the government to satisfy the threshold requirements for admission of testimony about Snapchat videos and images. Given that the victim's testimony was the primary evidence of the description of the sexually explicit images and videos appellant exchanged with a minor, it significantly lowered the government's burden of proof as to the specification of Charge II and specification 4 of Charge IV, yet the military judge still convicted appellant of these specifications.

Further, the military judge's bias impacted appellant's substantial right to have his guilt proven beyond a reasonable doubt. Appellant was convicted of offenses that were alleged to have been prejudicial to good order and discipline for

which the government presented no evidence. Specifications 1, 3, 4, 5 of Charge IV and the specification of Additional Charge I allege that appellant possessed, produced, and distributed child pornography. The terminal elements for each of these specifications allege appellant's conduct was both service discrediting and to the prejudice of good order and discipline in the armed forces. "[E]very element of a criminal offense—including the terminal element of Article 134, UCMJ—must be proven beyond a reasonable doubt and cannot be conclusively presumed based on the accused's conduct...." *United States v. Richard*, 82 M.J. 473, 474 (C.A.A.F. 2022). The absence of evidence, even when viewed in the light most favorable to the prosecution, could not have allowed any rational trier of fact to find appellant's conduct was to the prejudice of good order and discipline in the armed forces. *See United States v. Wilcox*, 66 M.J. 442, 451 (C.A.A.F. 2008) (finding convictions under Article 134, UCMJ legally insufficient where the "mere possibility... unsupported by the record" of the terminal element being satisfied was "so tenuous and speculative as to be legally insufficient...."). Where, as here, the government offered no evidence to prove appellant's conduct was to the prejudice of good order and discipline in the armed forces for any of the aforementioned specifications, it follows that the military judge failed to hold the government to its burden as to that element. Even when defense requested the military judge reconsider his finding as to Specification 5 of Charge IV, including that there was insufficient evidence to support the element of prejudice to good order and discipline, the military judge erroneously affirmed his finding as to even that specific element, without providing any rationale which would afford him increased deference.[10]

The most egregious act by the military judge impacting appellant's substantial rights was his failure to review one of the central pieces of the government's evidence, appellant's law enforcement interview. While the government published excerpts of the interview, there was a significant portion of appellant's interview not published in open court, requiring the military judge review the remainder of the interview during his deliberations. Appellant's own admissions are one of the strongest forms of proof for the government in satisfying its burden of proof. *United States v. Torres*, 60 M.J. 559, 569 (A.F. Ct. Crim. App. 2004) (citing *Ariz v. Fulminante*, 499 U.S. 279, 296 (1991)). At the same time, the tone of the interview

---

[10] We acknowledge that the military judge issued a written ruling in response to a defense request that the military judge reconsider his findings as to Specification 1,3,4,5 of Charge IV as it pertained to the "prejudicial to good order and discipline" language. However, the military judge's written ruling on the sufficiency of the evidence of "prejudicial to good order and discipline" is little more than conclusory and merely references appellant's being a military member in a foreign country as being sufficient evidence to support this element. The military judge's cursory analysis does not support a great level of deference by this court.

and the interview tactics used by law enforcement in obtaining appellant's statements were central to the defense theory of the case. Further, exculpatory and mitigating information provided by appellant in that interview was equally as important for the military judge both on the issue of guilt and as to an appropriate sentence. The military judge's failure to review that piece of evidence prejudiced appellant's right to a fair trial.

Finally, the military judge's bias impacted appellant's right to a sentence that is "sufficient, but not greater than necessary, to promote justice and maintain good order and discipline." R.C.M.1001(f). The government recommended that appellant be sentenced to no less than a total of five years of confinement for all offenses. The defense recommended that a total of 28 months of confinement was an appropriate sentence. The military judge sentenced appellant to concurrent terms of: three years of confinement for sexual abuse of a child; three years of confinement for distribution of child pornography; two years of confinement for each of the two specifications of possession of child pornography occurring in 2019; seven years of confinement for production of child pornography; and three years of confinement for an additional specification of possession of child pornography that occurred after appellant was aware he was under investigation for child pornography offenses. The military judge adjudged a total of seven years of confinement, significantly in excess of the sentence the government recommended in this case. While it is not unlawful for a military judge to sentence appellant to a term of confinement in excess of the government's recommendation, it is certainly unusual for a military judge to do so. The victim testified that the offenses made him feel angry and worthless, it negatively impacted his relationship with his parents and friends, and he canceled his fifteenth birthday party over it. However, the government did not present any additional aggravation evidence. Yet, the military judge imposed a sentence greater that the government's recommendation. We find that, under the facts of this case, the military judge's personal bias impacted his imposition of an appropriate sentence.

For the aforementioned reasons, we hold that the military judge's failure to recuse himself materially prejudiced appellant's substantial rights.

### E. Even Absent Prejudice Appellant Is Entitled to Relief Under Liljeberg

Even absent material prejudice to a substantial right pursuant to Article 59(a), UCMJ, a judge's failure to disqualify himself may still require a remedy after applying the test laid out in *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862-864 (1988) for an appearance of bias.

In *Liljeberg*, the Supreme Court considered three factors in determining "whether a judgment should be vacated" based on a judge's appearance of partiality: "[1] the risk of injustice to the parties in the particular case, [2] the risk that the

denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864. The Court of Appeals for the Armed Forces (CAAF) applies the same three-part test in analyzing cases involving a military judge's appearance of partiality pursuant to R.C.M. 902(a). *See United States v. Quintanilla*, 56 M.J. 37, 45 (C.A.A.F. 2001).

The analysis for the third *Liljeberg* factor is "similar to the standard applied in the initial R.C.M. 902(a) analysis" in that we apply an objective standard and view the issue of disqualification through the eyes of a reasonable member of the public. *Martinez*, 70 M.J. at 159-60. However, the analysis of the third *Liljeberg* factor is much broader than the initial R.C.M. 902(a) analysis because "we do not limit our review to facts relevant to recusal, but rather review the entire proceedings, to include any post-trial proceeding, the convening authority action, [appellate proceedings], or other facts relevant to the *Liljeberg* test." *Id.* at 160. Put simply, courts consider the totality of the facts and circumstances surrounding the basis for disqualification to determine if a remedy is warranted. *See, e.g., United States v. Kish*, No. 201100404, 2014 CCA LEXIS 358 (N.M. Ct. Crim. App. 17 Jun. 2014) (considering both the military judge's actions during appellant's court-martial and the military judge's public comments made two weeks after appellant's trial as part of the analysis of *Liljeberg's* third factor); *see also Berman*, 28 M.J. at 618 ("What happened on 4 December and after between [the military judge and the prosecuting attorney] is relevant to our assessment of their relationship prior to that date").

We conclude that reversal is required under the three *Liljeberg* factors. For the first factor, we have identified several injustices appellant suffered at the hands of the military judge. It is not simply that there were a number of adverse rulings against appellant, but that those rulings failed to hold the government to its burden of proof, including failing to review all of the evidence. As previously discussed, some of the military judge's rulings exhibited personal bias on his part. While he did not rule uniformly in the government's favor, some of his rulings were erroneous and others not given appreciable deliberation. Appellant challenged the government's case at almost every opportunity and often times renewed objections and requested reconsideration of adverse rulings as a result of a lack of appreciable consideration by the military judge. Further, much of the government's evidence related to the exchange of child pornography with a minor was based primarily upon the testimony of the minor. The government did not present evidence of the images or videos exchanged and was unable to conduct a full analysis of appellant's cell phone to potentially recover any of those images or videos. The government's evidence on the offenses of sexual abuse of a minor, impersonating a law enforcement agent, and production of child pornography was not overwhelming.

For the second factor, appellant did not address this point in his brief, instead focusing on the first and third *Liljeberg* factors. Because appellant did not present any argument on this point, we are convinced it is "not necessary to reverse the

17

results of the present trial in order to ensure that military judges exercise the appropriate degree of discretion in the future." *United States v. Uribe*, 80 M.J. 442, 450 (C.A.A.F. 2021) (quoting *Butcher*, 56 M.J. at 93). Our conclusion that the military judge plainly erred in failing to recuse himself in this case will serve as a sufficient deterrent for military judges in future cases to be appropriately mindful of their obligations under R.C.M. 902.

Upon examination of the entire proceedings, the third *Liljeberg* factor favors reversal of the court-martial findings and sentence. For all the same reasons that we found both actual bias and the appearance of bias, and material prejudice to appellant's substantial rights, we conclude that the military judge's actions in this case would undermine the public's confidence in the judicial process. We would find that just on this factor alone the case warrants reversal, but together with the first factor, we are even more convinced that reversal is warranted in this case.

## CONCLUSION

The findings of guilty and the sentence are SET ASIDE. A rehearing is authorized.

Judge HAYES and Judge PARKER concur.

FOR THE COURT:



STEVEN P. HAIGHT
Acting Clerk of Court